**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
(Alexandria Division)

| | |
|---|---|
| **FIJI ZAIRE**<br>4390 King Street<br>Apt. 1604<br>Alexandria, VA 22302<br><br>Plaintiff,<br><br>v.<br><br>**EPISCOPAL HIGH SCHOOL**,<br>1200 North Quaker Lane<br>Alexandria, Virginia  22302<br><br>Defendant. | Civil Action No. _____<br><br>**JURY TRIAL DEMAND** |

## COMPLAINT

1. Plaintiff, Ms. Fiji Zaire ("Plaintiff" or "Ms. Zaire") brings this action against Defendant Episcopal High School ("Defendant") seeking declaratory, injunctive and monetary relief.

2. This Complaint seeks to redress harm that Ms. Zaire suffered as a result of Defendant subjecting her to discrimination because of her race (African American) and her disability (diabetes), retaliation for her protected activity, and a hostile work environment.

3. Ms. Zaire's claims arise under the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §§ 2000e *et seq.*; the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), as amended by the Civil Rights Act of 1991; and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq*. ("ADA").

4. Specifically this matter arises because Defendant discriminated and retaliated against Ms. Zaire after she engaged in protected activity and opposed unlawful behavior in contravention

of Title VII, Section 1981, and the ADA. Defendant also created a hostile work environment which changed the terms and conditions of Plaintiff's employment.

5. Ms. Zaire is seeking damages from Defendant for the above-mentioned violations.

## JURISDICTION AND VENUE

6. This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII"); the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981"), as amended by the Civil Rights Act of 1991; and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA").

7. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because this action raises allegations under federal law.

8. Venue is proper under 28 U.S.C. § 1391 because the events or omission giving rise to these claims occurred in the Eastern District of Virginia.

9. Ms. Zaire works for Defendant in Alexandria, Virginia within this judicial district.

10. Ms. Sanders also resides in Alexandria, Virginia within this judicial district.

On or about January 12, 2018, Plaintiff filed a charge of discrimination and retaliation with the City of Alexandria Office of Human Rights ("OHR"). Such charge was filed within 300 days after one or more of the alleged unlawful employment practices in violation of 42 U.S.C. §§ 2000e-2 had occurred.

## PROCEDURAL REQUIREMENTS

11. On or about May 2018, Plaintiff filed a charge of discrimination and retaliation with the City of Alexandria Office of Human Rights ("OHR"). Such charge was filed within 300 days after one or more of the alleged unlawful employment practices in violation of 42 U.S.C. §§ 2000e-2 had

occurred. Plaintiff filed her amended charge with OHR on August 6, 2018 to include references to the ongoing retaliation and discrimination she was suffering from.

12. On or about March 29, 2019, Plaintiff received a Notice of Right to Sue from the EEOC that was dated March 27, 2019. This notice gave Plaintiff 90 days from the receipt of the notice to file a Complaint related to her Title VII claims.

## PARTIES

13. Plaintiff Fiji Zaire is an African American female with diabetes who began working at EHS as a Security Officer at EHS on October 16, 2016.

14. Defendant EHS is a private school. At all times relevant to this cause of action, Defendant was and still is Ms. Zaire's employer within the meaning of all statutes relevant to this complaint.

## FACTS

15. Ms. Zaire has performed well for Defendant and received exemplary performance evaluations.

16. Ms. Zaire has been meeting and exceeding the expectations for her job, and has received positive feedback from EHS employees, students, and their parents.

17. Plaintiff enjoyed her work and was a valued employee until November 2017, which was when she began facing disparate treatment in scheduling, compensation, discipline, and workplace scrutiny due to her protected activity and opposition activity, as described in detail below.

18. As background, Roxanne Yakoub (White) began working as Director of Security in October of 2017, and was Ms. Zaire's supervisor.

19. On November 10, 2017, Ms. Yakoub called Ms. Zaire into her office to meet with her.

20. When Ms. Zaire met with Ms. Yakoub, she informed her that she had been informed that she was the only one leaving the campus. Ms. Zaire explained to Ms. Yakoub that everyone left the

campus and that she was leaving the campus to get food since she is diabetic. Ms. Yakoub told Ms. Zaire that she couldn't tell her what other officers did. Ms. Zaire stated that she could because she worked every shift and observed other security officers take breaks off campus. Ms. Zaire also informed her that her former manager, Mr. Hamlin, had provided her the reasonable accommodation of leaving campus due to her disability. She also told her that she only went to the gas station when she didn't have time to get a snack prior to coming to work because she's a diabetic and that Mr. Hamlin had permitted her stop to take a break when she needed to have a snack. Ms. Yakoub told Plaintiff that she didn't get a break, which was a denial of her previously authorized reasonable accommodation. Plaintiff asked her why, if Mr. Hamlin was on campus, she couldn't have her snack break. She replied stating that Mr. Hamlin was not an officer.

**Race & Disability Discrimination**

21. Plaintiff's direct supervisor, Roxanne Yakoub (White), Director of Security treated Mauricio Aguilar (Hispanic) and Edwin Gonzalez (Hispanic), both Security Officers, more favorably than Plaintiff and other African American security officers.

22. Specifically, Ms. Zaire was treated differently with regards to breaks, leaving campus, clocking out, boot and uniform purchases, wand tours in high winds, and scheduling.

23. Plaintiff has made multiple complaints to Jordan Christensen (White), Human Resources Administrator, about race and disability discrimination against her by Ms. Yakoub and the ongoing retaliation she has faced.

24. Some, but not all, examples of how the Hispanic and non-disabled security officers have more favorable terms and conditions of employment compared to Plaintiff (and the other black security officers) are as follows:

a. Ms. Yakoub solicits feedback from Mr. Aguilar and Mr. Gonzalez regarding uniforms and shoes, but does not solicit feedback from Plaintiff and other African American security officers.

b. Mr. Aguilar and Mr. Gonzalez are also given priority for overtime hours. Mr. Aguilar was also given preferential treatment in requesting days off.

c. Ms. Yakoub allowed Mr. Aguilar to email her to request time off instead of completing a written form to request time off, like she requires me to do.

d. Mr. Aguilar also received preferential treatment in not having his schedule changed, whereas Plaintiff and another black co-worker Lucian Hibbert both had their schedules changed in March of 2018 after Ms. Yakoub emailed all three of them stating, "It has come up that it may be considered unfair if you all were able to keep your shifts without any changes."

e. On November 6, 2017, after a team meeting Mr. Aguilar told Ms. Yakoub that he needed new boots. She told him to get what he wanted and to take the receipt to the accounts payable clerk to get a reimbursement. Right after that conversation, Plaintiff also told Ms. Yakoub that she also needed new boots, and she told Plaintiff that she would have to wait due to the budget. When Plaintiff asked her why she had just approved Mr. Aguilar's new boots purchase, but wouldn't approve hers, she got no response from her. On April 10, 2018, Ms. Yakoub had a group email with Mr. Gonzalez and Ms. Aguilar about boots that she was thinking about getting for the department, Ms. Yakoub did not include other team members who are African American in her email to the Hispanic staff.

25. On November 16, 2017, when Ms. Zaire arrived to work that afternoon she was called into a meeting with Ms. Yakoub. Ms. Yakoub told her that she was giving her a verbal counseling. She told her, "You don't smile." Ms. Zaire's response was that a lot of people are happy that

don't smile all the time. Ms. Yakoub then stated, "Yes, people with mental problems." Ms. Zaire responded saying, "So I have a mental problem now?" Ms. Yakoub shrugged her shoulders and said, "Well…" After the meeting, Plaintiff told Ms. Yakoub that she was going to speak with Mr. Christensen in HR. She told Ms. Zaire that she couldn't go talk to him. Plaintiff told her that she couldn't prevent her from speaking with him. Then she said that she was going to check to see if it was ok for Ms. Zaire to speak with him.

26. Right after her meeting with Ms. Yakoub, Plaintiff went to Mr. Christensen's office and explained that she was a diabetic and that Ms. Yakoub told her that she was no longer allowed to take a break and how she was allowing all other officers to leave the campus, but not her. She also told him that in her meeting with her right before she came to his office, Ms. Yakoub said that Ms. Zaire had a mental problem, which was wholly inappropriate. Mr. Christensen told Plaintiff that he would talk to Ms. Yakoub.

27. I believe that I have been harassed and treated differently on the basis of my race and disability. I further assert that Respondent has continued to retaliate against me since I voiced my objections to the discrimination and retaliation.

28. Ms. Zaire was also subjected to discriminatory and inappropriate scrutiny in Fall 2017 till present. Ms. Zaire has been singled out, targeted, monitored, and harassed within EHS due to her protected activities.

29. EHS has mismanaged Ms. Zaire' complaints as evidenced by emails from Zaire to Christensen.

30. The EHS management emails show the conspiracy to go after Ms. Zaire and/or ignore her claims.

31. Ms. Zaire has sent emails to Christensen and de Butts complaining of race and disability discrimination and retaliation but nothing has been done to prevent further retaliation.

**Targeting**

32. The key facts relevant to this letter are that Mr. Hamlin reports that Ms. Yakoub retaliated against Ms. Zaire after she complained of the discrimination. He described that Ms. Yakoub went after Ms. Zaire and how that was not right.

33. Ms. Alarape noticed that Ms. Yakoub would single her out. On occasion, she witnessed Ms. Yakoub publicly embarrass Ms. Zaire to give the impression that Ms. Zaire was unable to properly do her job.

34. Yet, in the March 15th meeting, **Mr. Christensen told Ms. Yakoub to not say anything else to Ms. Zaire regarding not smiling**. Mr. Hamlin is a witness to this conversation. Also, nowhere in his affidavit does he mention how Ms. Yakoub said that Ms. Zaire had a mental illness because she didn't smile. Serious and unhappy are two separate things. School security is a serious matter. She's not a flight attendant or restaurant hostess. This wasn't Ms. Yakoub merely counseling Ms. Zaire on her demeanor at work. This was targeted harassment.

35. Mr. Christensen said he could not find evidence that Ms. Yakoub was discriminating against Ms. Zaire or singling her out. However, in the May 2018 timeframe Mr. Christensen told Mr. Hamlin that he could see why Ms. Zaire was feeling discriminated and singled out.

36. Ms. Zaire told Ms. Yakoub that she felt that she was being treated differently than everyone else due to her disability because she was the only person who couldn't leave and everyone else who was non-disabled could.

**Scheduling**

37. Ms. Alarape states, "In March 2018, Ms. Yakoub decided to change the schedules for all security officers, but she gave Mr. Aguilar and Mr. Gonzalez, preferential treatment and more favorable work schedules. I reminded Ms. Yakoub that I had seniority over Mr. Gonzalez, and

that, in the past, requests for a particular schedule by officers with greater seniority were respected by management. Ms. Yakoub's final schedule took into account my other employment, but still gave preferential treatment to Mr. Aguilar and Mr. Gonzalez."

38. After she complained to HR about Ms. Yakoub, Ms. Yakoub changed Ms. Zaire's schedule to 3pm-11pm in March 2018. Ms. Lea left because of the race discrimination, so Ms. Zaire was able to keep her shift from 1-9pm. Ms. Yakoub wanted to give less favorable shift to Ms. Zaire because she wanted another employee who she had hired (Sheldon Pegues) to take the 7am to 3pm shift, but Mr. Hamlin told her it should be given based on seniority.

39. In contrast to how the black security officers were treated, Mr. Aguilar and Mr. Gonzales received preference and didn't have to fight for their schedules. Mr. Hamlin even spoke with Ms. Yakoub once he perceived that she was treating the Hispanics more favorably in the scheduling. **This is further evidence of Ms. Yakoub's less favorable treatment toward her black employees.**

40. In her amended complaint, she said, "Mr. Aguilar and Mr. Gonzalez are also given priority for overtime hours. We have emails from Ms. Yakoub to Mr. Gonzales and Mr. Aguilar offering them overtime hours. "I want to offer this to you guys first." (emph. added).

41. As proof of Ms. Yakoub's preference for Hispanic employees with scheduling, Mr. Aguilar's DAR states, "**Did not do wand tour due to weather**.". In fact, to cover her tracks Ms. Yakoub emailed Mr. Aguilar and told him to amend his DAR to "didn't perform because of calls and not weather".

42. EHS maintains a pattern of discrimination in employment on the basis of race.

**Damages**

43. The discrimination, retaliation and defamation have affected Ms. Zaire mentally, emotionally, physically and financially.

44. Ms. Zaire has also received less compensation because of the retaliatory overtime scheduling.

### COUNT I: RACE DISCRIMINATION
### UNDER TITLE VII, SECTION 1981, & THE ADA

45. Plaintiff Ms. Zaire re-alleges, adopts and incorporates by reference all averments in the foregoing paragraphs.

46. Plaintiff, because of her race, was denied terms and conditions of employment in violation of Title VII, Section 1981, and the ADA.

47. Defendant engaged in unlawful discrimination against Plaintiff.

48. EHS subjected Plaintiff to disparate treatment in compensation, discipline, scheduling and workplace scrutiny.

49. Defendant's discrimination against Plaintiff was an intentional or reckless disregard of Plaintiff's rights under Title VII, Section 1981, and the ADA.

50. Defendant engaged in the discriminatory actions described above with malice, or with a reckless indifference to Plaintiff's legal rights. Title VII , Section 1981, and the ADA provide that Plaintiff is therefore entitled to punitive damages for Defendant's actions alleged herein.

51. Plaintiff has been damaged as a result of Defendant's willful, intentional and unlawful conduct. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, continues to suffer, and will in the future suffer humiliation, distress, embarrassment, inconvenience, mental anguish, pain, suffering, injury and damages, including damage to her reputation and good will, litigation expenses including attorney's fees, and consequential damages, and other injuries.

## COUNT II: RETALIATION UNDER TITLE VII, SECTION 1981, & THE ADA

52. Ms. Zaire re-alleges, adopts and incorporates by reference all averments in the foregoing paragraphs.

53. Plaintiff, because of her race and disability, was denied terms and conditions of employment in violation of Title VII of the Civil Rights Act of 1964, Section 1981, and the ADA.

54. Defendant's discrimination against Plaintiff was an intentional or reckless disregard of Plaintiff's rights under Title VII, Section 1981, and the ADA.

55. EHS through its agents and employees, engaged in retaliation in violation of Title VII, Section 1981, and the ADA in connection with its treatment of Plaintiff and the terms and conditions of Plaintiff's employment.

56. Ms. Zaire engaged in protected activity when she made complaints to EHS management, Human Resources, and the OHR/EEOC about the discrimination, harassment, hostile work environment, and retaliation she was suffering.

57. Defendant was aware of the protected activity in which Ms. Zaire engaged.

58. EHS management engaged in retaliation in violation of Title VII in connection with his treatment of Plaintiff and the terms and conditions of Plaintiff's employment.

59. Defendant retaliated against Ms. Zaire by issuing her more severe discipline than her coworkers who had not engaged in protected activity.

60. Defendant retaliated against Ms. Zaire by depriving her of compensation in the form of withholding overtime hours.

61. Defendant retaliated against Ms. Zaire by soliciting negative complaints against Ms. Zaire.

62. In doing the acts and engaging in the conduct herein alleged, Defendant intended to and did vex, harass, annoy, and cause Plaintiff to suffer and continue to suffer emotional distress.

63. Defendant's acts alleged herein are malicious, oppressive, and in conscious disregard of Plaintiff's rights. As such, punitive damages are warranted against Defendant.

64. Plaintiff has been damaged as a result of Defendant's willful, intentional and unlawful conduct. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, continues to suffer, and will in the future suffer humiliation, distress, embarrassment, inconvenience, mental anguish, pain, suffering, injury and damages, including damage to her reputation and good will, litigation expenses including attorney's fees, and consequential damages, and other injuries.

### COUNT III: HOSTILE WORK ENVIRONMENT UNDER TITLE VII, SECTION 1981, & THE ADA

65. Ms. Zaire re-alleges, adopts and incorporates by reference all averments in the foregoing paragraphs.

66. Title VII, Section 1981, and the ADA prevent employers from subjecting employees to a hostile work environment due to their membership in a protected status group.

67. Ms. Zaire is in a protected status group as black woman with diabetes.

68. Defendant created a hostile work environment by allowing EHS management to harass Plaintiff due to her protected status group, opposition activities and protected activities..

69. EHS management's conduct was based on her race and was sufficiently severe or pervasive when it altered the conditions of her employment, and created an abusive and fearful work environment that was imputable to Defendant.

70. Plaintiff has been damaged as a result of Defendant's willful, intentional and unlawful conduct. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered, continues to suffer, and will in the future suffer humiliation, distress, embarrassment, inconvenience, mental anguish, pain, suffering, injury and damages, including damage to her reputation and good will, loss of employee benefits, litigation expense including attorney's fees, and other damages.

## **RELIEF SOUGHT**

**WHEREFORE**, Plaintiff Zaire, by counsel, requests this Court to grant judgment against Defendant for all injuries proximately caused by Defendant's unlawful actions, including, but not limited to:

A. Enter judgment for Plaintiff against Defendant;

B. Declare that the conduct of Defendant is a willful violation of the Plaintiff's rights as secured by Title VII of the Civil Rights Act of 1964, as amended;

C. Award Ms. Zaire compensatory damages, plus past and future pecuniary damages on each of the above-stated Counts;

D. Award Ms. Zaire punitive damages;

E. Award Ms. Zaire remuneration and privileges of employment retroactive to the date of any unlawful action found to have occurred in this case;

F. Award Ms. Zaire pecuniary and out-of-pocket expenses;

G. Order Defendant to pay all reasonable attorneys' fees, expert costs, court costs, and expenses incurred by Ms. Zaire as a result of Defendant's actions and inactions, as well as pre- and post-judgment interest; and

H. Order such other equitable and legal relief as the Court deems necessary and appropriate.

**PLAINTIFF DEMANDS A JURY TRIAL.**


Dated: June 29, 2019                              **FIJI ZAIRE**

                                                  By Counsel:

                                                  ___/s/ _____
                                                  Monique A. Miles, Esq.
                                                  VSB # 78828
                                                  Old Towne Associates, P.C.

        216 South Patrick Street
Alexandria, Virginia 22314-3528
Ph: 703-519-6810
Fax: 703-549-0449
mmiles@oldtowneassociates.com

*Attorney for Plaintiff*